UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

NNONSO EKWEGBALU,                    :
                                     :
                                     :     **MEMORANDUM DECISION AND**
                    Petitioner,      :     **ORDER**
                                     :
        - against -                  :     17-cv-0759 (BMC)
                                     :
                                     :
PAUL CHAPPIUS, Superintendent, Elmira :
Correctional Facility,               :
                                     :
                                     :
                    Respondent.      :
                                     :
--------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court conviction after a jury trial and modification on appeal for first degree manslaughter, attempted first degree assault, second degree assault, and second degree criminal possession of a weapon, for which he was sentenced to an aggregate of thirty years' custody. The facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, the charges arose out of a street fight between the Crips and the Bloods, the former of which defendant was a member. According to his statement to the police, petitioner organized the confrontation and came armed with a handgun because he had a beef with one of the Bloods. By the end of the fight, an innocent bystander, 13-year-old Kevin Miller, was dead from a shot to the head and a person at a nearby car wash, Pedro Garcia, was shot in the leg. The prosecution's theory of the case was that petitioner was liable as the accomplice of his fellow Crips member, Gregory Calas, who had shot and killed Miller, and that petitioner himself had shot Garcia.

Petitioner raises three points of error: (1) the evidence was legally insufficient to prove accomplice liability as to Miller's murder, or that petitioner had shot Garcia; (2) the trial court's jury instructions on accessorial liability deprived petitioner of due process of law; and (3) the trial court's failure to adequately respond to the jury's request for a readback also deprived petitioner of due process of law.  The first and third claims do not warrant relief under 28 U.S.C. § 2254(d) and the second claim is procedurally barred.  Accordingly, the petition is denied.

## I.      Sufficiency of the Evidence

In the Appellate Division and here, petitioner argued that the evidence was insufficient to make him an accomplice to his co-defendant's shooting of Miller, and that the evidence did not support the jury's determination that petitioner had actually fired the gun that injured Garcia. The Appellate Division rejected this argument on the merits: "Viewing the evidence in the light most favorable to the People, we find that it was legally sufficient to establish, beyond a reasonable  doubt, the defendant's guilt of manslaughter in the first degree and criminal possession of a weapon in the second degree, under an acting-in-concert theory."  People v. Ekwegbalu, 131 A.D.3d 982, 983, 15 N.Y.S.3d 847, 848-49 (2d Dep't 2015) (citation omitted), leave to app. denied, 26 N.Y.S.3d 1108, 26 N.Y.S.3d 767 (2016).

Because the Appellate Division decided this issue on the merits, my review attracts the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  AEDPA permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d)(1).  The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the

relevant Supreme Court precedent.  Williams v. Taylor, 529 U.S. 362, 405 (2000).  A state court

decision involves "an unreasonable application" of clearly established federal law if the state

court applies federal law to the facts of the case "in an objectively unreasonable manner."

Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely

narrow, and is intended only as "a guard against extreme malfunctions in the state criminal

justice systems, not a substitute for ordinary error correction through appeal . . . ."  Ryan v.

Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks and citation omitted).  "A state

court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

The Supreme Court has repeatedly admonished lower courts for not affording sufficient

deference to state court determinations of constitutional issues.  See, e.g., White v. Wheeler, 577

U.S. 73, 76-77 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth

necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier

to federal habeas relief for prisoners whose claims have been adjudicated in state court.'"

(quoting Burt v. Titlow, 571 U.S. 12, 19 (2013)).

This forgiving standard of review makes petitioner's task particularly difficult, for the

test in determining the constitutional sufficiency of evidence to support a conviction is itself

restrictive.  The standard for reviewing claims of legal insufficiency is "whether, after viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443

U.S. 307, 319 (1979).  Thus, even when "faced with a record of historical facts that supports

conflicting inferences, [the habeas court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.  Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (internal quotation marks omitted).

Petitioner's legal insufficiency claim does not meet the AEDPA standard for reversal. The prosecution's case rested on extensive evidence including the following:

- testimony from an eyewitness, Ephraim Foster, who identified petitioner as one of the shooters.

- Foster identified petitioner as wearing an orange shirt during the shooting, which was confirmed by video surveillance cameras.

- Michael Laing testified that he knew both petitioner and Calas as Crips members. Although Laing did not see petitioner with a gun, he saw Calas shooting a .380 semi-automatic in the same direction that Foster had testified petitioner was shooting.

- Ballistics showed that Kevin Miller died from a .380 semi-automatic round.

- Although petitioner did not outright confess, he gave a statement to the police acknowledging that he went to the fight carrying a .22 caliber revolver just to scare people; that he got into a physical struggle with some Bloods members and that they were struggling for the gun; and that during that struggle, petitioner heard shots.

- Petitioner acknowledged that he had thrown away the gun after the shooting.

- Petitioner's statement to the police also acknowledged that the fight had occurred because of a prior fight he had with an individual named "Dilan", although he would not state the reason for the fight.  Petitioner acknowledged that he had agreed with Dilan to meet the next day, along with their "crews," for the express purpose of having the fight.

- A police sergeant who knew petitioner testified that petitioner was a member of the Crips.

- A bystander driving by the scene observed an individual holding "something" in his hand and pointing it towards the crowd. Although the bystander could not identify petitioner or Calas, he described this person's clothing, which substantially corroborated Laing's description of Calas.

Fairminded jurists might disagree as to whether the evidence was sufficient to satisfy the elements of the crimes of which petitioner was convicted, but that in itself is sufficient to preclude habeas corpus relief.  Harrington, 562 U.S. at 101.

As to petitioner's manslaughter conviction, since Kevin Miller was killed, the prosecution only needed to show that petitioner had acted in concert with Calas and with intent to cause serious physical injury.  By his own statements, petitioner organized the fight.  He came armed.  He came with Calas.  Witnesses identified both petitioner and Calas as shooting in the direction where the injuries occurred.  If a state court finds that this evidence is sufficient to support in-concert liability under state law, the due process clause does not prevent it.  In other words, if a member of the Crips decides to set up a fight with the Bloods, brings his fellow gang members with him, at least one of whom is carrying a .380 semi-automatic, carries a loaded revolver himself, acknowledges that shots are fired, with videos showing the action that circumstantially, at least, confirmed the witnesses' testimony, and people are shot and killed or injured, then a fairminded jurist could conclude that the jury was not irrational in finding that those doing the shooting were acting in concert.

Petitioner's primary argument appears to be that as to the acting in concert manslaughter charge, there was no direct evidence that petitioner knew that Calas brought a gun to the fight.  But an inference could be drawn that he did.  Since the evidence showed that petitioner was the instigator and organizer of the fight, why would he think that only he, not Calas, had a gun?  The jury could rationally infer that petitioner knew that his comrade-in-arms was, in fact, armed, because petitioner clearly anticipated a gunfight, and he would have known that his fellow gang member would follow his example.  Petitioner characterizes Calas's decision to come armed as an "independent act," but a jury could rationally find little or nothing independent about it.

The assault conviction is, based on the evidence, not a lock – I disagree with the District Attorney's rote recitation that the evidence was "overwhelming" – but the evidence is sufficient to withstand AEDPA review.  Viewing the evidence most favorably to the prosecution, petitioner admitted that he had a .22, and Foster testified that he fired it Garcia's direction.  Petitioner's main points are that Foster's testimony to this effect contradicted Laing's; Foster had first identified someone else in the drive-around after the crime; and the investigating officers' failure to find petitioner's gun (despite an exhaustive search) suggested that petitioner's statement to the police that he had a gun should not be believed.  But a fair-minded jurist could conclude that these issues were for the jury to decide.

I therefore reject petitioner's legal insufficiency claim.

## II.     Instructions on Accessory Liability

On direct appeal to the Appellate Division, petitioner's brief included a point heading entitled

THE TRIAL COURT'S FAILURE TO MEANINGFULLY COMPLY WITH
CPL 310.10 IN RESPONDING TO THE JURY'S QUESTIONS
CONSTITUTED A MODE OF PROCEEDINGS ERROR REQUIRING
REVERSAL

New York Criminal Procedure Law § 310.30 (miscited as § 310.10), authorizes juries, *inter alia*, to request "further instruction or information with respect to the law" during deliberations.  The New York Court of Appeals has interpreted the statute to require, in most cases, that "[a]fter the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses."  People v. O'Rama, 78 N.Y.2d 270, 278, 574 N.Y.S.2d 159, 162 (1991).

Petitioner's argument to the Appellate Division was that the trial court failed to comply with this statute.  The argument began by noting that (1) defense counsel had requested a "mere presence at the scene is insufficient" instruction with regard to the murder and manslaughter counts, which the trial court rejected; and (2) during deliberations, the jury had sent out seven notes, three of which sought to clarify the concept of acting in concert.  The error raised in the argument pertained to the jury's sixth and seventh notes.

The sixth note asked whether the intent element of the murder and manslaughter charges "appl[ied] to defendant only, or can it be interpreted to include intent in concert?"  While the trial court was collecting the parties' views as to which charge to readback, but before it obtained defense counsel's views, the jury sent its seventh note asking to rehear the charge for second degree murder.  In response to that seventh note, without soliciting the parties' views, the trial court recharged second degree murder, and did not otherwise respond to the sixth note.

Petitioner's argument on direct appeal was that the trial court erred in not getting the parties' views before responding to the sixth and seventh notes.  It discussed <u>People v. Gadson</u>, 110 A.D.3d 1098, 973 N.Y.S.2d 768 (2d Dep't 2013), where the Appellate Division reversed a conviction because of the trial court's failure to solicit counsel's response before unilaterally deciding how to respond to the last of several jury notes asking a substantive question.  Thus, on direct appeal, petitioner's argument was that a procedural error had occurred in failing to solicit the parties' opinions before responding to the sixth and seventh notes.

The argument that petitioner advances in the instant habeas petition arising from these facts has little in common with his argument to the Appellate Division.  Here, the brief point heading is

THE TRIAL COURT'S FAILURE TO PROVIDE THE
JURY WITH COMPLETE AND ACCURATE
INSTRUCTIONS ON THE LAW REGARDING
ACCESSORIAL LIABILITY INFECTED THE ENTIRE
TRIAL AND DEPRIVED THE PETITIONER OF DUE
PROCESS OF LAW.

Consistent with this heading, the argument makes only a passing reference to the jury's sixth

note and none to the seventh.  It does not mention C.P.L. § 310.30.  It challenges the initial

instruction of the trial court in not including the "mere presence" language, and the trial court's

failure to supplement that instruction in all the jury's notes that touched on acting-in-concert.  It

alleges a failure to instruct adequately on the substantive law of in-concert liability, not the

procedural failure to solicit parties' views before responding to notes, as required by O'Rama.

Petitioner has, in short, first transformed his claim before the Appellate Division into a different

claim, and then added a constitutional component that was never fairly presented to the

Appellate Division.  Even putting aside the different basis for the claim in the Appellate Division

as compared to the claim here, there was not even an attempt to alert the Appellate Division to

any federal constitutional issue arising out of the communications between the trial court and the

jury, which is of course the predicate for this Court's consideration of habeas corpus relief.

It does not take much to exhaust a federal constitutional claim in state court.  A habeas

corpus petitioner need only have cited the state court to a provision of the U.S. Constitution, or to

state or federal cases that discuss the constitutional claim, or he may raise a fact pattern that is

typical of constitutional litigation.  Daye v. Att'y Gen., 696 F.2d 186, 190-92 (2d Cir. 1982) (en

banc).  None of that happened in state court with respect to this claim, whether the claim is

characterized as a failure to solicit the parties' views on how to respond to the sixth and seventh

notes (as it was raised in the Appellate Division), or failing to adequately instruct the jury on in-concert liability as a matter of due process (as it has been recharacterized here).

Moreover, the failure to exhaust the claim leaves petitioner with no avenue through which it can be addressed. Petitioner cannot go back to the Appellate Division to exhaust the new claim he has raised here because only one direct appeal is permitted under New York criminal procedure. See Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001). When that happens, a claim raised on habeas corpus is deemed exhausted, rather than making the petitioner undertake a futile gesture of state court review. See, e.g., Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citing Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"). However, exhaustion does not help the petitioner because the claim is procedurally barred. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004); DiGuglielmo, 366 F.3d at 135; McKethan, 292 F.3d at 122-23; Ramirez v. Att'y Gen., 280 F.3d 87, 94 (2d Cir. 2001); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997).

If a claim is procedurally barred, as it is here, there are circumstances in which a federal court may consider the merits of the claim. A procedurally barred claim can be reviewed if the petitioner can demonstrate cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750; Harris, 489 U.S. at 262. The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel [or] that 'some interference by state officials' made compliance impracticable, or that the procedural default is

the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal alterations omitted)). But although ineffective assistance of counsel can constitute "cause" sufficient to avoid a procedural default, Murray, 477 U.S. at 488-89, if a petitioner wishes to rely on ineffective assistance, the ineffective assistance claim must itself have been exhausted in the state court. Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

The latter avenue for avoiding a procedural bar, a fundamental miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray, 477 U.S. at 495-96. "A fundamental miscarriage of justice occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" Funderbird-Day v. Artuz, No. 97 Civ. 7786, 2002 WL 31427345, at *6 (S.D.N.Y. Nov. 4, 2002) (quoting Rodriguez v. Mitchell, 252 F.3d 191, 204 (2d Cir. 2001)). For a fundamental miscarriage of justice, a petitioner must demonstrate by clear and convincing evidence that but for the constitutional error, no reasonable juror would have returned a guilty verdict. Reyes v. New York, No. 99 Civ. 3628, 1999 WL 1059961, at *3 (S.D.N.Y. Nov. 22, 1999) (citing Sawyer v. Whitley, 505 U.S. 333, 335 (1992)).

Petitioner in this case cannot rely on ineffective assistance of counsel, as no such claim was ever raised let alone exhausted in the state courts. Petitioner's appellate counsel simply did not raise the constitutional claim that he is attempting to raise here.

Nor does this come close to presenting a fundamental miscarriage of justice. We are talking about a one-sentence addition to a jury instruction under New York law. Indeed, even if I were to not apply the procedural bar, petitioner has cited no Supreme Court cases that touch

upon the constitutional requirements for instructing a jury on in-concert liability, if there are any, and so a review of the merits could not result in any relief under AEDPA.

This claim is therefore rejected as procedurally barred.

### III.    Inadequate response to request for testimonial readback

This is another claim based on C.P.L. § 310.30.  It arose out of the jury's request during deliberations for a readback of Laing's and Foster's testimony.  The trial court granted the request, advising the jury in advance that if there came point during the read back of the testimony "when you have all agreed you have heard what you wanted to hear, just [] get together and raise your hands and signal in some way, ok?"

During the readback of Laing's testimony, the following ensued:

THE COURT: Members of the jury, I see some of you [indicating hands moving horizontally].  I told you, the reporter is prepared to readback the entire familiar [sic].  Having said this, if there comes a point when you all agree that you don't want to hear anymore, then, you have to just let your foreperson know.

 (Jury huddling.)

JUROR 1: We are done.

THE COURT: The jury has heard the testimony that they wish to have heard. Now, we will read back the testimony of Mr. Foster.  And, again, should you wish any further testimony of Mr. Laing read back at any time, it will be read back to you.

(At this time the readback was done.)

THE COURT: You have heard the testimony that you had requested?

JUROR 1: Yes.

THE COURT: If you wish to hear any testimony of this witness Mr. Foster, just write it in a note signed by your foreperson.

On direct appeal, petitioner contended the trial court had not "meaningfully respond[ed] to the jury's request" as required by C.P.L. § 310.30 by cutting off the readback of the testimony. He further argued that the trial court "pressured the jury into rescinding their request for a read back of the testimony" and that this "violated [petitioner's] rights to due process of law under the Federal and state constitutions." The Appellate Division rejected the argument as "unpreserved for appellate review and, in any event, without merit." Ekwegbalu, 131 A.D.3d at 984-85.

Unlike the preceding point, petitioner exhausted this claim in state court, albeit barely, by referring to "due process of law under the Federal . . . constitution[]." See Daye, 696 F.2d at 194. In addition, I am not going to apply the procedural bar found by the Appellate Division. The Appellate Division apparently thought that trial counsel had objected to the court's ruling too late, but having reviewed the transcript, I see no earlier point at which the trial court gave trial counsel an opportunity to object. The Appellate Division's reliance on the contemporaneous objection rule to find the claim unpreserved is therefore exorbitant. See Fulton v. Graham, 802 F.3d 257, 262 (2d Cir. 2015).

However, when a state court finds that an argument is "unpreserved . . . and in any event, without merit," and the federal habeas court determines that the state court was wrong about the claim being unpreserved, its alternative finding on the merits is entitled to deferential review under the AEDPA standard discussed above. See Waiters v. Lee, 857 F.3d 466, 477 (2d Cir. 2017). Under that standard, petitioner's claim clearly fails. The Supreme Court has never held that there is a constitutional right to have *any* portion of a trial transcript read back to the jury, nor has it noted any constitutional aspects of the process a trial court must use should it choose to do so. See Suarez v. Jaime, No. 18-cv-725, 2020 WL 3491867, at *4 (C.D. Cal. May 12, 2020); Chippero v. Att'y Gen. of N. J., No. 15-cv-6272 , 2020 WL 205947, at *12 (D.N.J. Jan. 14,

2020).  Not surprisingly, therefore, petitioner's memorandum in this habeas corpus case does not cite any Supreme Court decision that the Appellate Division unreasonably applied or that is contrary to its rejection of this claim.

This was a purely discretionary ruling that was not in any way informed by constitutional, let alone Supreme Court decisional, authority.  It therefore fails under AEDPA.

## CONCLUSION

The petition is denied and the case is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.  See 28 U.S.C. § 2253(c)(2).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, in forma pauperis status is denied for the purposes of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by
Brian M. Cogan
_____
U.S.D.J.

Dated:  Brooklyn, New York
        July 22, 2021

13